# NATHANIEL T. HATCH *vs.* WILLIAM PENDERGAST.

An ordinance regulating markets, provides for *licenses* for stalls or stands to be issued, on payment therefor of *five dollars*, but, to prevent loss to the city, by failure of persons to obtain licenses, it further provides that in that contingency, the party may be fined, and also requires the market clerk to collect the license money due by the granting of the certificates, and to pay the same over to the register. HELD:

1st. That the payment of the *license fee* confers on the party the right to use the stand or stall whether a license be obtained or not, but mere payment of *rent* for a stand, *without* reference to the license fee, does not vest title to the stand.

2nd. A paper in the form of a receipt, signed by the market clerk, stating that he had received *five dollars* for a specified stand, is to be construed as a certificate of payment of the required *license fee* for the use of the stand.

Title to market-stands, the mode of renting which is provided for by ordinance, cannot be acquired *by possession;* every seller must be considered as holding his stand *by contract* with the city, subject to the market regulations, and not adversely to its authority.

If difficulty arises between the holders of certificates for contiguous stands, the limits of which are not defined on the pavement, it is the duty of the market clerk to interpose and determine their respective rights, and, if necessary, to call the police to his aid in preserving order and peace in the market.

Whatever effect a man's *motives* may have on the question of *damages*, they do not determine the aggrieved party's *right to recover*.

An instruction, which leaves to the jury to find whether the plaintiff had received a certificate as *required by law*, and was using the stand lawfully, is erroneous, because these were matters which the *court only* could determine.

APPEAL from the Court of Common Pleas.

*Trespass on the case,* brought on the 1st of August 1856, by the appellee against the appellant, who was the clerk of the Lexington market, to recover damages for depriving the plaintiff, with force and violence, of a street stand on Paca street in said market, and putting another party in possession thereof, which said stand, the plaintiff claimed, had been rented by him from Baltimore city, from the 1st of May 1856, to the 1st of May 1857. The defendant pleaded that the plaintiff was not entitled to the stand or stall, as alleged, and that he did not commit or do the wrong alleged.

*Exception.* The evidence by several witnesses on the part of the plaintiff was that, his wife had occupied a stall in the Lexington market for eighteen or twenty years, and the space thus occupied was the same described in the following certificates, offered in evidence by the plaintiff:

"Received of William Pendergast five dollars in full for

street stand on Paca street, in rear of —— stall. Rent of stall No. 12, Lexington market, due the first day of May 1855, $5. (Signed.) Thomas E. Byus, Clerk." On the back whereof is this endorsement: "I hereby transfer all my right to the within stall to Thos. Pendergast: (Signed,) *William Pendergast.* Approved May 25th, 1855: Thos. E. Byus, Clerk Lexington market."

"Received of Wm. Pendergast five dollars in full for street stand in Paca St. Rent of stall No. — Lexington market, due the first day of May 1856, $5. (Signed,) Nath. T. Hatch, Clerk."

It was further proved that, in June 1856, the defendant, with the aid of a police officer, and against the remonstrances of Mrs. Pendergast, removed from the space occupied by her, some chickens and strawberries she had for sale, and drew them towards the middle of the street at the end of her table, and put one Daniel Little in possession of the space thus taken from her.

The defendant then offered in evidence the Ordinance No. 26 of 1850, from the Revised Ordinances of that year, and the following certificates, with the endorsements thereon:

"Received of Thomas Kirby five dollars in full for street stand on Paca street, rear of Mrs. Pendergast. Rent of stall No. — Lexington market, due the first day of May 1855, $5. (Signed,) Thomas E. Byus, Clerk." On the back whereof is this endorsement: "Balto., Oct. 15th, 1855, I hereby transfer all my right to the within stall to Danl. Little: (Signed,) *Thomas Kirby.* Approved: Thos E. Byus, Clerk Lexington market."

"Received of Daniel Little five dollars in full for street stand on Paca street, rear of Mrs. Pendergast. Rent of stall No. 1, Lexington market, due the first day of May 1856, $5. (Signed,) Nathl. T. Hatch, Clerk.

Further evidence was offered on the part of the defendant that the space from which the articles of Mrs. Pendergast were removed, was embraced in the stand rented to Kirby and Little, under the above certificates, that Kirby had entered into possession thereof, and quietly used and employed it as his

stall until his assignment to Little; that Little, under this assignment, in like manner, quietly used it for some time, but, on returning to take possession thereof, after recovery from sickness, he found the space which had been claimed and used by him as his stand, under said assignment and his certificate, occupied by Mrs. Pendergast with her articles, and that he applied to the defendant, who was clerk of the market, to remove them, and he did so, with the aid of a police officer. It was further proved that none of the street stalls or stands in the Lexington market have any prescribed limits by marks or boundaries on the pavement. The defendant then asked the following instructions to the jury:

1st. That the certificate offered in evidence by the plaintiff, even if the jury should find it, gave to the plaintiff no title or right of possession to the stall mentioned in it.

2nd. If the jury find from the evidence, that the local limits of the stall mentioned in the said certificate, did not extend to that part of the street from which the chickens and strawberries were removed, as stated by the witnesses, and that they were taken from the stall No. 1, within the local limits of that stall as held by Kirby, and afterwards by Little, under their respective certificates, as given in evidence, then the plaintiff is not entitled to recover.

3rd. If the jury find the facts stated in the defendant's prayers, and further find that the defendant, in what he did in removing the said chickens and strawberries from the said space or stand, (if the jury shall find from the evidence that he did remove them from said place,) was actuated by an honest desire of faithfully performing what he regarded as a public duty, in his character of clerk of the market, and not from any disposition to oppress, or abuse his authority, then the plaintiff is not entitled to recover in this action.

The court (MARSHALL, J.) rejected these prayers, and gave to the jury this instruction: "If the jury believe, from the evidence in the cause, that the plaintiff paid the rent and received the certificate of renting, from the clerk of the market, required by law, for a particular stall in the market spoken of in the evidence, and that the plaintiff, or his agent, was

put in possossion of said stall, so rented, at the time spoken of in the evidence, and was using the same lawfully, and that the market master interfered with the plaintiff, or his agent or servant, in the said possession and use of the said stall, and removed from the same certain property of the plaintiff, forcibly and against the consent of the said plaintiff, or his agent, then the plaintiff is entitled to recover such damages as they may think the plaintiff has suffered, in such interference with his exercise of his rights and property."

The defendant excepted to the rejection of his prayers and to the instruction granted by the court, and the verdict and judgment being against him for $150 damages, with interest and costs, he appealed.

The cause was argued before LE GRAND, C. J., TUCK and BARTOL, J.

A. Stirling, Jr., for the appellant argued:

1st. That the certificates offered by the plaintiff, vested no title in him to the stand or stall in the market therein mentioned. By ordinance No. 26, of 1850, secs. 41, 42 and 44, a *license* must be issued with the approval of the Mayor, to entitle any one to the use or occcupancy of a market stall, and if no license is obtained, the party attempting to use or occupy any such stall is liable to a *fine*, and the market-master or clerk is required to remove and drive off every person using or occupying any stall, bench or stand, in any of the markets, contrary to the true intent and meaning of this ordinance. These certificates are not the *licenses* required by this ordinance, and the appellee, having failed to obtain a license, has not complied with the requirements of the law, and was properly removed by the defendant. The appellant's first prayer should, therefore, have been granted.

2nd. In rejecting the appellant's second prayer, the court gave full effect to the certificates of the plaintiff, while it took from the jury the consideration of the certificates of Kirby and Little which were entitled to, at least, equal weight, and it also took from the jury the consideration of

the evidence, that Kirby and Little had at one time occupied the space claimed by the plaintiff, and from which the goods had been moved.

3rd. The court erred in rejecting the *second* and *third* prayers, because if the certificates gave any right to the plaintiff, it was not a right to any particular space on the street, as there were no boundaries to the street stands, and from the nature of the tenancy no continuous use for twenty years or less could give any such right. The clerk of the market had a right to judge of the space occupied, and to apportion it between the parties claiming under these certificates, and the defendant, if acting *bona fide*, with a desire to discharge what he thought a public duty as clerk of the market, under the provisions of this ordinance, is not liable.

4th. The court's instruction is wrong, for the reasons already stated, and also because it leaves to the jury to say, what "certificate was required by law" as title to the stall, and leaves them to consider the fact of continuous possession as evidence of title, and also to find that when the plaintiff was put into possession, at the time spoken of in evidence, he had the proper certificate, of which there was no evidence. Besides this, it leaves to the *jury* a question of law, viz: whether the certificate was such a one as the ordinance required or not. It is for the *court* to construe all written contracts, and such a question as the construction of this ordinance, and whether these certificates conformed thereto, could not properly be left to the jury.

*John Stewart*, for the appellee, argued:

1st. That the certificates offered in evidence, did vest title in the plaintiff to the stall or stand mentioned in them. Sec. 41, of the ordinance of 1850, No. 26, requires the clerk of the market, whenever he shall rent, or hire out any stall, stand, shamble or bench, to give to the person or persons obtaining the same, a *certificate* thereof, which shall specify the terms of the tenure and the number or other description of the stall, stand, shamble or bench, and then if the Mayor shall approve of the terms of said certificate, he shall grant

to the person holding the same a *license* for the stall, stand, &c., for one year and no longer, and such license shall be transferable by endorsement, &c. Sec. 42, requires the clerk to collect the amount of the *license money* due by the granting of said certificates and pay the same over to the register. The *license* itself is but a matter of form; it is the payment of the *license fee* which is paid when the certificates are granted, and of which payment these certificates are evidence, which confers on the party the right to use the stand or stall. The license itself being but a matter of form has been dispensed with, and these *certificates* have been the only evidences of right to these stalls or stands which have ever been used, and the defendant, himself, has acted under this construction of the law. There was, therefore, no error in rejecting his first prayer.

2nd. That the court was right in rejecting the second prayer, because, otherwise more weight would have been given to the certificates of Little than to those of the plaintiff, if the jury should have found that the certificates on both sides covered the same space, and, further, because the granting of such prayer would have justified the marketmaster, in the use of force and violence in the ejection of the plaintiff from the space in question.

3rd. The court was also right in rejecting the third prayer, because it treated the defendant as having the right to act in a judicial capacity. It allows the defendant to be judge, jury, witness and sheriff,—to decide title—to put one party out and another party in where both hold by the same title. It moreover goes into the inquiry as to *motives*, and allows a *good motive* to so far justify a *wrongful act*, as to bar the right of action therefor.

4th. The court's instruction was also correct, because the tenure of the plaintiff was by virtue of the ordinance which was read by the defendant, as evidence to the jury, upon which therefore they had a perfect right to pass.

Tuck, J., delivered the opinion of this court.

The appellee sued the appellant to recover damages for

33     v.15

removing his fruits, and other articles, from a street-stand in the Lexington market, in the city of Baltimore; the defendant, at the time, being the clerk of the market, and having authority, under the ordinances of the city, to remove the party if he was not entitled to the use of the stand.

. There was evidence to show that Pendergast, a huckster, had occupied a stand for eighteen or twenty years, and he produced at the trial certificates that he had paid for stand No. 12, for the years from May 1853 to May 1856, and from May 1856 to May 1857, the last of which was given by Hatch, as clerk of the market; the acts complained of having occurred in June 1856. There was also evidence that one Little held stand No. 1, in the rear of Pendergast's, under like certificates from the market clerks, and that the articles were removed from his stand, and not from that of the plaintiff. Whether this was true or not was to be ascertained by the jury, from the conflicting evidence in the cause; the uncertainty arising, as we suppose, not from any want of confidence in the witnesses, but of definiteness as to the local limits of these stands, which, as the record shows, were not marked or bounded on the pavement.

The appellee claimed the use of the particular place as within the stand which the *nar.* avers he had rented from the city of Baltimore: the appellant, in defence, relied upon the ordinance regulating markets, and the authority thereby conferred on the clerks of markets; Rev. Ord., 1850, No. 26. Hence we see that the plaintiff, to recover, must show his right to occupy the *locus in quo,* and, for that purpose, reliance is placed upon the certificate granted by the appellant to the appellee in May 1856, and the use of the stand for eighteen or twenty years previously to the acts complained of.

Upon the claim by possession, we may remark, that title to a market stand cannot be acquired in that way. The ordinance provides the mode of renting such stands, and expressly authorises and directs the clerks, "to remove and drive off every person using or occupying any stall, bench or stand, in any of the markets, contrary to the true intent and meaning thereof," *Sec.* 44. Every seller must be considered as hold-

Hatch *vs.* Pendergast.

ing his stand by contract with the city, subject to the market regulations, and not adversely to its authority.

The first prayer tendered by the defendant, and refused, asserts that the certificate offered by the plaintiff did not vest in him a title to the stand therein mentioned. The solution of this proposition depends on the interpretation of the ordinance, and the character we are to give the paper. The 41st section, provides for licenses to be issued with the approval of the Mayor, on payment therefor of five dollars: but, to prevent loss to the city by failure of persons to obtain licenses, the 42nd section provides that, in that contingency, the party may be punished by fine, and also requires the clerk to collect the license money due by the granting of the certificates, and to pay the same over to the register. Upon a reasonable construction of these sections, we are of opinion, that the payment of the license fee confers on the party a right to use the stand or stall, whether a license be obtained or not. If, therefore, the paper in question was a certificate of payment of the license fee of five dollars for the use of the stand, the prayer was properly refused. If, however, it was a mere receipt for the rent, and the license money was not paid, it did not vest title to the stand, and the prayer ought to have been granted. From its phraseology we suppose the first construction to be the proper one, and affirm the ruling on the first prayer.

We do not perceive any valid objection to the second prayer. It merely submitted to the jury to find the extent of pavement to which the plaintiff was entitled under his certificate for stand No. 12. He could not complain of the removal of his goods from the stand of another person, and whether this was done or not, was one of the questions which the jury could alone decide. There were no local limits of the stands by marks and bounds, but it does not follow that their extent was incapable of ascertainment by the clerk. The plaintiff, as well as that officer, must have known how much stand No. 12, was intended to embrace; and the same was the case as to Little's stand, and if difficulty arose between these persons, it was the duty of the clerk to interfere

and determine their respective rights under the certificates, and, if necessary, to call the police to his aid in preserving order and peace in the market. The reasonableness of such a power is so obvious from the scope and policy of market regulations, that the proper officer should be sustained in the exercise of his functions. If the jury had found the facts stated in this prayer, the plaintiff ought not to have recovered, and it was therefore erroneously refused.

The defendant cannot complain of the rejection of his third prayer. Whatever effect a man's motives may have on the question of damages, they do not determine the aggrieved party's right to recover.

The court's instruction, as given, is liable to the objection that it left the jury to find whether the plaintiff had received a certificate as required by law, and was using the stand lawfully, which the court only could determine. It also assumed, (contrary to the views expressed in disposing of the first prayer,) that the payment of rent, without reference to the license fee, gave the plaintiff title to the stand.

The exception of the defendant is sustained as to the ruling on the second prayer, and the instruction given by the court.

*Judgment reversed and procedendo ordered.*

(Decided April 18th, 1860.)