Border State Savings Institute *vs.* Wilcox.

*Decree affirmed.*

(Decided 28th May, 1885.)

THE BORDER STATE SAVINGS INSTITUTE OF BALTIMORE CITY *vs.* HARRIET A. WILCOX.

*Further inquiry—Affected with Notice.*

The bill in this case charged that in November, 1870, the complainant held in the Sunrise Building Association ten shares of stock which, under the regulations of the Association, stood in the name of J. S. as her trustee; that upon these shares she received an advance of a thousand dollars from the Association, and as collateral security therefor executed a mortgage upon butcher's stall No. 1, in Belair market, belonging to her, and occupied by her in her business; that the stall was transferred from her name to the Building Association upon the books of the City Comptroller; that the loan had been fully paid, and she had requested the re-transfer of the butcher's stall on the Comptroller's books to her, but that the same was never done. The bill also charged that the complainant had continuously occupied the stall carrying on her business, after the transfer to the Building Association under the mortgage, as before it was so transferred, and that notwithstanding such occupancy by her, and her right to have the stall transferred back to her on the Comptroller's books, the Building Association, which the complainant was informed had ceased to do business in 1874,

had through its former officers under its seal, transferred the stall to the Border State Savings Institute; that such transfer was beyond the scope and purposes of the Association and therefore void. The bill charged further that the complainant had received notice from the Savings Institute to quit the stall; and that she was informed legal proceedings to eject her were about to be resorted to. The bill prayed an injunction, and that the Savings Institute might be required to transfer the stall to her. The answer of the Savings Institute averred ignorance of the complainant's shares in the Building Association, the loan to her on them, and the mortgage of the butcher's stall to secure it, and did not know whether the complainant had been in possession of it or not; but averred that these facts could not affect respondent's rights to the stall; that it had no means of knowing the relations of the complainant and the Building Association, and had no means of knowledge except that the stall stood on the Comptroller's books as belonging to the Building Association, and they knew of no other claim except that of J. S. The answer denied that the complainant was the rightful owner as against the respondent. The answer averred that in February, 1876, J. S. applied for a loan, and offered the stall as security, and that after inquiring as to the value of the stall, the respondent agreed to make the loan, being informed by J. S. that the Building Association held the stall as security for a loan made to him, and that he would have the Association transfer said stall directly to the respondent, which was done; that J. S. paid the interest on the loan until recently and had paid $200, of the principal, and that upon the failure of J. S. to pay the interest on the balance of the loan, the respondent proceeded to take action and for the first time learned of the complainant's claim. HELD:

1st. That the books of the City Comptroller were the only place where the respondent was bound to look, and whatever they disclosed was notice.

2nd. That there was sufficient disclosed by those books, in conjunction with the notorious possession by the complainant of the stall in question, to put the respondent upon further inquiry and affect him with notice.

3rd. That the complainant was entitled to the stall, and to have the same transferred to her on the books of the City Comptroller, upon the payment of such balance as might be found to be due from her to the Building Association upon the loan made to her by that Association.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, IRVING, RITCHIE, and BRYAN, J.

*James McColgan*, and *William M. Merrick*, for the appellant.

*Duncan Veazey*, for the appellee.

IRVING, J., delivered the opinion of the Court.

The bill in this cause charges, that in the month of November, 1870, the appellee held, in the "Sunrise Building Association of Baltimore," a corporation under the laws of this State, ten shares of stock which, under the regulations of the Association, stood in the name of John Sheppard, as trustee for her; that upon these shares she received an advance of one thousand dollars from the Association, and as collateral security therefor executed a mortgage upon Butcher Stall No. 1, in Belair Market, belonging to her and occupied by her in her business; that this stall was transferred from her name to the "Sunrise Building Association" upon the books of the City Comptroller. It further charges that this loan was fully paid, and she had requested the re-transfer of the "butcher stall" on the Comptroller's books to her, but that the same was never done. The bill charges that the appellee had continuously occupied the stall, carrying on her business after the transfer to the Building Association under the mortgage as before it was transferred, and that notwithstanding such occupancy by her, and her right to have the stall transferred back to her on the Comptroller's books, the Association, which, as complainant was informed, had ceased to do business in 1874, had, through its former

officers, viz., John Sheppard, president, A. B. Seiden-
stricker, secretary, and John F. Reinecker, treasurer,
transferred this butcher stall No. 1, under the seal of the
"Sunrise Building Association," to the "Border State
Savings Institute of Baltimore City," a corporation duly
incorporated under the laws of this State. The bill
charges, that the "Sunrise Building Association" had no
right to make this transfer, and that such transfer was be-
yond the scope and purposes of the organization, and was
therefore void; that the only ground on which it could
have disposed of the stall would have been the default of
the appellee in paying the amount due the institution on
the mortgage on the stall; and in such case, the sale
would have to be at public sale and not at private sale.
The bill charges, that the complainant had received notice
from the "Border State Savings Institute of Baltimore
City" to quit the stall No. 1, in Belair Market; and that
she was informed legal proceedings to eject her were
about to be resorted to. The bill prays injunction, and
that the "Border State Savings Institute" may be re-
quired to transfer the stall to her. A copy of the mort-
gage upon the stall to the "Sunrise Building Association,"
duly recorded among the land records of Baltimore City,
was filed with the bill. A copy of the constitution and
by-laws of the Building Association was also filed, and is
in the record.

The answer of the "Border State Savings Institute"
avers ignorance of complainant's shares in the "Sunrise
Building Association," the loan to her on them, and the
mortgage of the butcher stall to secure it, and does not
know whether complainant had been in possession of it or
not; but avers that these facts cannot affect respondent's
rights to the stall; that whatever might be the relations
of complainant and "Sunrise Building Association," it had
no means of knowing of them, and had no means of know-
ledge, except that the stall stood on the Comptroller's

books as belonging to the "Sunrise Building Association," and they knew of no other claim except that of John Sheppard. They admit sending the notice to quit, and the purpose to use all legal means to get possession of the stall, and deny that complainant is the rightful owner as against them. They aver that in February, 1876, John Sheppard applied for a loan of $800, and offered as security this stall; and that after inquiry as to the value of the stall, they agreed to make the loan, being informed by Sheppard that the "Sunrise Building Association" held the stall as security for a loan made to *him*, and that he would have that institution to transfer said stall directly to the respondent, which was done; that Sheppard continued to pay the interest on the loan until recently, and had paid two hundred dollars of the principal, and that upon the failure of Sheppard to pay the interest on the balance of the loan, they proceeded to take action, and for the first time learned of the appellee's claim.

Preliminary injunction was granted before answer filed, and after answer filed testimony was taken, and the case proceeded to decree, which decree established the right of the appellee to the butcher stall No. 1, in Belair Market, and directed the "Border State Savings Institute" "to transfer the same on the books of the City Comptroller" to the appellee upon the payment of such balance as may be found due from her to the "Sunrise Building Association" upon the loan made by that Association to her.

From this decree "The Border State Savings Institute of Baltimore City" has appealed.

The appellant contends that its money was advanced in good faith on the security of the market stall, and that it has received a proper transfer of it, without notice of any claim upon it except John Sheppard's, with whom it was dealing, and ought to be protected, no matter what the rights of the appellee may be against the "Sunrise Building Association;" and that appellee having exe-

34         v. 63.

cuted a transfer under which the "Sunrise Building Association" was enabled to convey to the appellant, she is estopped from setting up her possession as evidence of title. It is also contended that the transfer on the books of the City Comptroller is the *only* evidence of title, and is so made by the City Code, which requires transfers to be evidenced in that way ; and that holding such transfer, it must prevail over all other claims, unless actual notice is brought home to the appellant, or it had acted fraudulently, which is denied, and of which it is claimed there is not the slightest proof. It is also claimed, that if John Sheppard has perpetrated a fraud on the appellee, she must bear the consequences for having put it in his power to deceive the appellant.

The appellee contends, that the decree ought to be affirmed on the proof; because there was a gross fraud perpetrated on her ; and though the appellant was also deceived into accepting the market stall as security for a loan, that the appellee had been so long time in the open and notorious possession of the stall, the appellant was put thereby upon inquiry into the nature and character of such possession, and, that having failed to make the inquiry, it should be visited with the consequences of its negligence. The question is simply which of the contending parties has the better equity.

In *Rose vs. Mayor, &c., of Baltimore,* 51 *Md.,* 256, it was decided, that a market stall is not an interest in land, and is not a freehold estate ; but that it is an *exclusive* right to be exercised in a particular way and for a particular purpose. It is a valuable right and sells for much money. It is transferable—an alienable right. It is a species of property which, in practice, it seems, is used as collateral security for loans. The appellee both transferred on the Comptroller's books and executed a regular mortgage thereon which was duly recorded among the land records of the city. The appellant took it in secu-

rity, but contented itself with a bare transfer on the Comptroller's books, as provided for in the City Code. As a species of property, for the passage of title to which special provision is made, it may, of course, be given and taken in collateral security, by securing a transfer on the Comptroller's books, where evidence of title is required to be.

But the method of transfer, and the place where it is to be entered, being provided for in the law regulating the subject, we do not think the record of the appellee's mortgage on the stall gave constructive notice of its existence and provisions. It was not within the registration laws, and the exception to it on that account was well taken. The City Comptroller's books was the only place one was bound to look, and whatever it disclosed was notice. We think, however, enough was disclosed by those books, in conjunction with the notorious possession of the appellee of the stall in question, to put the appellant upon further inquiry. The Comptroller's books show, that the appellee was the last owner before the "Sunrise Building Association." The appellant, therefore, had notice, that its title came through the appellee to the "Sunrise Building Association," and thence to it; and that *John Sheppard did not* transfer it to the "Sunrise Building Association," for he is not shown by the books to have ever owned it. The nature of the business of the "Sunrise Building Association" being that of money-lending and not property buying and selling or renting, and not that of selling butchers' meats, naturally suggested, that it had taken this stall in security for money loaned to the *last* owner, whose name was on the Comptroller's books preceding it. That person was the appellee, who for years had occupied that stall on all market days established by city law, which was all the occupancy such place was capable of.

The only record of title showed, *prima facie*, that *John Sheppard could not have pledged it for he did not own it.*

Had appellant's committee visited the stall on a day named in the ordinance as a market day for that market, and not on an off-day, as they did, they would have found the appellee in possession. She was, by the proof, there, conducting business, on all market days. It was empty, when they went, only because on that day there was no market at that place. The stall stood on the books of the City Comptroller as belonging to the "Sunrise Building Association," and as having come to them from the appellee and not from John Sheppard; and as already stated, the nature of its business suggested its ownership could only be as collateral security from the last preceding owner of record. In fact, it was so, and had the appellant made such inquiry, as we think the facts before it suggested ought to be made, it would have learned the truth. The appellant's officers say they knew of no other claimant but John Sheppard, but they relied wholly on his statements, and neglected to make the inquiry which would have correctly informed them. We do not see how Mrs. Wilcox's permission of John Sheppard to hold the stock in the "Sunrise Building Association" as her trustee favorably affects the appellant, for confessedly it did not know it, and therefore could not be influenced by it. *Hatch vs. Pendergast*, 15 *Md.*, 252, only decides, that title to a market stall cannot be acquired against the city by adverse possession; and that all occupants must be regarded as holding their stands by contract with the city, "and not adversely to its authority." Title by adverse possession is not set up in this case, but *possession* is shown as a fact, claimed to be such as to put the appellant on inquiry respecting it. In *Baynard vs. Norris, et al.*, 5 *Gill*, 483, the authorities are collated as showing that possession of a party, whose rights are involved in a purchase, is a sufficient intimation of those rights to put the purchaser upon an inquiry into the nature of such possession and the right under which it is held. The same case also fully estab-

lishes, that if there be circumstances, which in the exercise of common reason and prudence ought to put a man on inquiry, he will be charged with notice of every fact which that inquiry would give him. The possession of this market stall was the only way of asserting an "exclusive right" to possession, and it was sufficiently notorious to put the appellant on inquiry. Had the inquiry been made, it would have been found that the appellee paid the annual license fee; and although she paid it in the name of the "Sunrise Building Association," that its title was purely collateral; and that at the time of the transaction with the appellant, but little was due on the loan it was taken as security for. It follows from what we have said and the authorities cited, that evidence of possession was admissible, and the exceptions to it were untenable. We think the Circuit Court was right in holding, that the appellant had sufficient facts before it to put it on inquiry, which having neglected to make, it must be affected with notice of the true state of the case. And the decree will be affirmed.

*Decree affirmed.*

(Decided 28th May, 1885.)