HENRY PFEFFERLING *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE and Others.

*Market Stalls—License under Ordinance not Providing for Renewal.*

Under its charter, the city of Baltimore has power to erect and regulate markets and dispose of the stalls therein. *Held,* that where a license to use a market stall for one year is issued to a party under a municipal ordinance which gives him no right to demand its renewal, the passage of a subsequent ordinance under which another party becomes entitled to the stall after the expiration of the year, does not deprive the first licensee of any property right, and is valid.


Appeal from a decree of the Circuit Court No. 2 of Baltimore City (SHARP, J.), dismissing the bill of complaint. The bill prayed among other things that the comptroller of the city and the clerk of Lafayette market may be enjoined and required to issue to the plaintiff a license for the stall referred to, from May 1, 1897, to May 1, 1898.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE and BOYD, JJ.

*Henry W. Fox* and *Joseph C. France,* for the appellant.

*C. Dodd McFarland* (with whom was *Emil Budnitz* on the brief), for Alfred Brown, one of the appellees.

*John V. L. Findlay, City Counsellor,* filed a brief for the mayor and city council of Baltimore, one of the appellees.

FOWLER, J., delivered the opinion of the Court.
The appellant filed a bill in the Circuit Court No. 2 of Baltimore City for an injunction to restrain the appel-

lees, the mayor and city council of Baltimore and certain of its officers, from interfering with his possession and control of a certain market stall which is particularly described in the proceedings. The defendant, Brown, answered, but the city demurred. However the sole question involved is whether the ordinance No. 129 of said city relating to the regulation of markets is a valid and constitutional exercise of legislative power.

It appears that the defendant, Brown, was duly licensed to hold the stall one year from 1st May, 1895, and a similar license was issued to him on the 1st May, 1896, to hold also for a year from that date. Brown had not been occupying the stall himself, but had rented it to the plaintiff up to May 1st, 1896. The then existing ordinances of Baltimore City, Art. 35, sec. 21, provided that no stalls should be rented to any person who shall not intend to occupy the same during the term of said renting—and all such persons were required, May 1, 1896, to surrender licenses theretofore issued to them. It appears from the answer of the defendant, Brown, that he duly surrendered his license of May 1, 1896, and another was duly issued to him of the same date. But a second license for the same stall dated the 7th May, 1896, was issued to the plaintiff—upon the theory, as alleged by him, that the city had determined to enforce the ordinance then in existence under which licenses could be issued only to such persons as intended to occupy the stalls. In what manner it was determined, if it was so determined, by the city officer having the matter in charge that the defendant did not intend to occupy the stall it does not appear. In point of fact he alleges that he took possession. But it is conceded that the plaintiff, being in possession on the 1st May, 1896, he so remained until his license of May 7 was revoked under the ordinance No. 129, which was passed on the 23rd August, 1896. It is the validity of this ordinance which is here assailed. The plaintiff was allowed to hold possession of the stall for the full term named in his license that is to the 1st May, 1897, but he demanded that his license should be renewed for another year from

said last mentioned date, which demand was refused and a license was issued to the defendant under the provisions of sec. 21 of said ordinance—the plaintiff's license having been previously revoked as we have seen.

Under the provision of its charter, Art. 4, sec. 671, 678, etc., Baltimore City has power to erect and regulate markets, and to lease, sell or dispose of the stalls and stands therein in any manner and for any term they may think proper. (See also Act of 1898, ch. 123, sec. 6 (Gen. Powers) sub-division markets.) In the exercise of this power ordinances have been passed from time to time, and the construction of some of them have been made by this Court. It was held in the case of *Rose* v. *The Mayor & City Council*, 51 Md. 270, that although the city owned a fee in the land on which Richmond market stands, yet the purchasers of stalls took only a qualified interest—not a freehold—but a right in the nature of an easement, limited in duration to the existence of the market and subject to such changes and modifications in the market as public needs may require. We have also recognized that this right or easement " may be given and taken as security for debt and sold." In *Green* v. *Western Nat. Bank*, 86 Md. 290, it was held that the interest of such a purchaser or owner of market stall is subject to the lien of an execution. But whatever may be the interest and rights of a purchaser is beside the question now before us. The plaintiff is a mere licensee or lessee holding the stall in question for a year. His contention, however, is that under sec. 17 of the ordinance in question he is entitled to have his license renewed. But it seems to us he has no standing to make any such contention. The license issued to him May 7, 1896, was under the ordinance in existence prior to that of August 23, 1896—No. 129—which did not give him the right to a renewal. This right was first conferred by the ordinance just named of August 23, 1896. But, although the question is not necessarily involved in this case, we do not wish to be understood as intimating that even if the plaintiff's license had been issued under an ordinance providing for renewal he and

his assignees could have compelled such renewals from time to time without limit.  The stall in question was rented or licensed to the plaintiff for the nominal sum of $5, and if his contention be correct that he and his assigns have under the ordinance in question a right to a continuous renewal, the city would thus be deprived of its right to make a new lease or license and also of its power to sell.

But we are unable to perceive upon what ground the ordinance regulating the leasing of stalls can be questioned.  As we construe the ordinance which was in existence May, 1896, when as the plaintiff alleges he first rented the stall from the city, he took it for one year, that is until 1st May, 1897.  It is true that the subsequent ordinance provided (sec. 21) that all persons (thus including the defendant) to whom licenses were issued on May 1, 1895, shall be entitled to receive licenses for said stalls for the year beginning May 1, 1896, and that any license issued May 1, 1896, to any other person (thus including the plaintiff) than hereinbefore mentioned shall be revoked.  But it must be remembered that this ordinance was not passed until August 23, 1896, and that when under it the license was issued to the defendant, it was only for one year from May, 1897. Thus the construction placed upon the ordinance and the power of revocation thereby conferred made good the licenses of May 1, 1896, and the only effect of revoking these licenses was to deprive the holders thereof of the benefit of renewal, to which, as we said, they were in no wise entitled, inasmuch as the ordinance in existence when they were issued made no provision for renewals.  Being, therefore, of opinion that the plaintiff has not been deprived by the legislation in question of any property or contractual rights, and that in passing ordinance 129, August 23, 1896, the mayor and city council were in the proper exercise of the police power of the State given by its charter, the decree appealed from will be affirmed.

*Decree affirmed with costs.*