## F. LESLIE TIMANUS

### vs.

## MAYOR AND CITY COUNCIL OF BALTIMORE AND OTHERS.

*Streets: Baltimore City; Commissioners for Opening—; appeals; failure to grade does not lengthen time for appeal. Public officials: estoppel.*

Where it is sought to bind a municipality through the principle of estoppel because of misleading statements claimed to have been made by public officers of the municipality, it is not sufficient to allege and prove that the party complaining actually was misled by the statement; it must further appear that the statement was calculated to mislead.                      p. 112

Appeal was taken to the Baltimore City Court from the action of the Commissioners for Opening Streets in awarding damages and assessing benefits in the matter of the opening of Gwynn's Falls Park; the City moved to dismiss the appeal on the ground that it was not taken within the time prescribed by law; an answer was filed by one of the property holders affected alleging, in substance, that one of the commissioners at the hearing, for which public notice had been given, had advised him and other property owners there present, that the assessments, etc., were not final and that, in view of the opposition to the project, it would probably be dropped, and that if final awards were made new notices would be sent; it was further alleged that upon learning that the awards in the case had been made final and without any such new notices having been given, the appeal was taken to the Baltimore City Court. On appeal to the Court of Appeals from the order of the City Court dismissing the appeal thus made, it was: *Held* (without regard to the legal sufficiency of the defense), that the evidence in the record did not sustain the allegations in the answer, that any of the commissioners had promised to give such further notice.                      pp. 113, 114

In condemnation proceedings for the opening of streets in Baltimore City, the fact that the grade of the proposed street had not been established at the time the Commissioners for

Opening Streets assessed benefits that were objected to does not extend the time within which appeals to the Baltimore City Court may be made, or relieve one from the consequences of one's delay.                              pp. 110-111

The provisions of the municipal charter in regard to opening streets, condemning property, etc., are not only intended to safeguard the rights of those interested in property affected by the matter, but to insure accurate and prompt performance of the duties imposed upon the public officers.          p. 112

A municipality ought not to be bound or estopped by any statement or promise made by public officials, excepting as to such as are made in connection with and in relation to the discharge of their duties.                              p. 112

*Decided February 29th, 1916.*

Appeal from the Baltimore City Court. (AMBLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON and STOCKBRIDGE, JJ.

*John D. Nock* and *Jacob S. New* (with whom were *Benson & Karr, Julius H. Wyman, Chas. E. Ecker* and *George A. Solter* on the brief), for the appellant.

*E. J. Colgan, Jr., Assistant City Solicitor,* (with whom was *S. S. Field, City Solicitor,* on the brief), for the appellee.

THOMAS, J., delivered the opinion of the Court.

This appeal is from an order of the Baltimore City Court dismissing the appeal of the appellant from the action of the Commissioners for Opening Streets in Baltimore City awarding damages and assessing benefits in the opening of Gwynn's Falls Parkway from Reisterstown Road to Gwynn's Falls Park.

The motion to dismiss was made by the City on the ground that the appeal was not taken within the time prescribed by law. The appellant filed an answer to the motion in which he alleged that on the 19th of August, 1913, he received a notice of the amount of the damages awarded and benefits assessed to his property, and "that the Commissioners for Opening Streets would meet at their office on August 26th, 1913, at eleven o'clock A. M. to review the same and would sit for that purpose for ten days"; that within the ten days mentioned in said notice, he, "together with four other property owners on Mt. Holly street, appeared before the Commissioners for Opening Streets and requested a review of said award"; that the Commissioners, through Eugene E. Grannan, Esq., advised the appellant "and the other property owners not to press the matter at that time, that the assessments and awards were not final and there was no occasion for a review at that time; that in view of the popular objection, the ordinance would doubtless be repealed and the project abandoned, but if not, that the Commissioners would take the matter under consideration, make final awards, and that there would be additional notices given of these awards, at which time this appellant and certain other property owners might appear and present their claims, and that until this appellant and the other property owners heard from him, the said Grannan, they were to do nothing further"; that relying upon this statement of the Commissioners the appellant waited for some time to hear from them, "and upon learning some time later that said awards had been made final" he immediately filed his appeal. The answer further alleged that the award of damages and assessment of benefits were made by the Commissioners for Opening Streets on August 18th, 1913, before the grade of Gwynn's Falls Parkway, where it touches the appellant's property, was finally established, on June 1st, 1914, and that the proceedings of the Commissioners for Opening Streets were therefore irregular and void.

Section 177 of the Charter of Baltimore City (Act of 1912, Ch. 32) provides: "As soon as the Commissioners

aforesaid (Commissioners for Opening Streets) have completed the valuation of damages to be ascertained by them as directed by this Article, they shall cause a statement thereof to be made out for the inspection of all persons desiring information of its contents, and such statement, together with and explanatory map or maps, shall contain a description of each separate lot or parcel of ground deemed to have sustained damages, its dimensions, the name of the street, lane or alley on which it bounds, the names of all persons supposed to have any estate or interest in it, and the amount of damages as valued by the Commissioners; * * * and in like manner a description of each parcel of ground deemed by the Commissioners to be benefited, the name or names of such person or persons as may be supposed to have any estate or interest therein, and the amount assessed thereon for benefits; and the said Commissioners shall cause a notice to be published for four successive days in two daily newspapers of the city stating the extent of the ground covered by the assessment, and that such statement and maps are ready for the inspection of all persons interested therein and that the Commissioners will meet at their office on a day to be named in said notice, which shall be not less than five nor more than ten days after the first publication of such notice, for the purpose of reviewing any of the matters contained in such statement to which any person claiming to be interested shall make objection; and the Commissioners shall meet at the time and place so appointed, and shall hear and consider all such representations or testimony on oath or affirmation, verbal or in writing, in relation to any matter in said statement which shall be offered to them on behalf of any person claiming to be interested therein, and said Commissioners shall make all such corrections and alterations in the valuations, assessments and estimates, and all other matters contained in said statements and explanatory map or maps aforesaid, as in their judgment shall appear to them, or a majority of them, to be just and proper; and they may adjourn, from day to day, if necessary, to give all parties claiming a review an

opportunity to be heard, not exceeding in the whole ten days; and after closing such review the Commissioners shall make all such corrections in their statement and explanatory map or maps as they shall deem proper, and cause such statement as corrected to be recorded in their book of proceedings, and certified under the hands and seals of said Commissioners and their clerk, and notify all persons interested by advertisement, to be inserted once a week for four successive weeks, in two of the daily newspapers of the city that the said assessments have been completed, and that the parties affected thereby are entitled to appeal therefrom by petition in writing to the Baltimore City Court within thirty days after the first publication of said notice." Section 178 of the Charter (Act of 1912, Ch. 32) declares: "It shall be the duty of the Clerk of the Commissioners for Opening Streets to serve written or printed notice upon each and every party or parties assessed for damages, caused by the condemnation and opening of any public highway; provided, however, that the service of such notice shall not be so construed as to be one of the pre-requisites to the condemnation and opening of any street under any ordinance heretofore passed, or hereafter to be passed," and section 179 provides that "The Mayor and City Council of Baltimore or any person or persons, or corporations, who may be dissatisfied with the assessment of damages or benefits, as hereinbefore provided, may, within thirty days after the first publication of the notice provided in section 177, appeal by petition, in writing, to the Baltimore City Court, praying the said Court to review the same," etc.

It appears from the record and the evidence produced by the City and the appellant at the hearing in the Court below of the motion to dismiss the appeal that the appellant received on or about the 19th of August, 1913, a notice from the Commissioners of the amount of damages awarded and benefits assessed in reference to his property, which also stated that the Commissioners would meet at their office on the 26th of August, 1913, at eleven o'clock A. M. to review

110. TIMANUS vs. M. & C. C. OF BALTO.

Opinion of the Court.                                [128

the same, "continuing ten days"; that in pursuance of said notice the appellant, and six other property owners who had received similar notices, appeared before the Commissioners and were given a hearing on the 28th day of August, 1913, at which hearing they, through John P. Lauber, who acted as their spokesman, made their protest and explained their objections to the awards and assessments made by the Commissioners; that the final awards and assessments were completed and signed by the Commissioners on the 22nd day of January, 1914; that notice of the completion of the assessments by the Commissioners, etc., and of the right of the parties interested to appeal therefrom by petition in writing to the Baltimore City Court within thirty days after the first publication of said notice was published in the Baltimore American and German Correspondent; that the first publication of said notice was on the 23rd of January, 1914; that the appellant's appeal from the action of the Commissioners was not taken until the 3rd of March, 1914, and that at that time the grade of Gwynn's Falls Parkway had not been established.

The grounds upon which the appellant claims that the order appealed from should be reversed are (1) that the Commissioners for Opening Streets can not assess benefits against property affected by the opening of a street before the grade of the street has been established; (2) that the notice provided for in section 178 of the City Charter was not served on the appellant by the clerk of the Commissioners, and (3) that his failure to file his appeal within the time prescribed by the Charter was due to misleading statements made to him by one of the Commissioners.

If we assume the correctness of the first proposition, the fact that the grade of Gwynn's Falls Parkway was not established at the time the Commissioners assessed the benefits objected to would not extend the time within which the appellant was allowed to appeal or relieve him, in this case, of the consequences of his delay. On the contrary, it furnished an additional reason why he should have been diligent in pur-

suing the remedy the law provided.   In the case of *Mayor and C. C. of Baltimore* v. *Johnson,* 123 Md. 320, where a bill was filed by a property owner, who had appealed to the Baltimore City Court from the action of the Commissioners for Opening Streets, to enjoin the City from "proceeding with the trial and hearing of the appeal * * * until the establishment of the grade of Park Hill Avenue," the Court, in dismissing the bill, said: "In cases like the one before us, section 179 of the Local Laws of Baltimore City (sec. 10, Art. 48, of the Baltimore City Code of 1893) provides for an appeal by 'any person or persons or corporation who may be dissatisfied with the assessment of damages or benefits, etc.,' by petition in writing to the Baltimore City Court, and that Court is given 'full power to hear and fully examine the subject and decide upon said appeal.'   The appellee had the right to have her appeal heard by the Baltimore City Court, to which she appealed, and it was within the jurisdiction of that Court to hear and determine all questions connected with those proceedings in which she was interested (*Baltimore* v. *Coates,* 85 Md. 535), including the question here presented, that is, whether or not the grade of the street opened through the lands of the appellee should be first established by the city before it be permitted to assess the appellee with benefits to her adjacent lands, caused by the opening of said street; and from the action of the Court in ruling upon this question a further appeal will lie in this Court. The appellee had her adequate remedy in the Baltimore City Court, or in this Court on appeal from its action, and thus the Equity Court was without jurisdiction to grant the relief sought."   *Johnson's Case* was followed in the later case of *Patterson* v. *Baltimore City,* 124 Md. 153.   The Baltimore City Court on appeal could have reviewed the action and proceedings of the Commissioners complained of, and in order to secure that review it was incumbent upon the appellant to take his appeal within the time allowed.   *Hopper* v. *Jones,* 64 Md. 578.

The argument of the appellant in his brief that the Baltimore City Court can not "entertain an appeal from the Commissioners for Opening Streets until the grade of the street has been established," would lead to the conclusion that the appeal was premature. If that were so there could be no error in the order of the Court below dismissing his appeal.

In regard to the second proposition it is only necessary to say that section 178 expressly declares "that the service of such notice shall not be so construed as to be one of the prerequisites to the condemnation and opening of any street under any ordinance heretofore passed, or hereafter to be passed," and that in section 179 the time allowed for an appeal is "within thirty days of the first publication of the *notice provided in section* 177."

The question raised by the remaining contention of the appellant is not so free of difficulty. While we will not stop, in disposing of it, to consider how far and under what circumstances the City may be estopped from enforcing the provisions of its Charter by statements or promises of its officers or City officials, it may be well to observe that the provisions of the Charter with which we are concerned in this case were not only intended to safeguard the rights of those interested in property affected by the opening of a street, but to insure accurate and prompt performance of the duties imposed upon the Commissioners for Opening Streets, and that the City ought not to be bound or estopped by any statement or promise made by them except such as are made in connection with and relate to the discharge of those duties. We may also state that where there is a claim such as is here made, it is not sufficient to show that the party was actually misled, but it must further appear that the statements or promises relied upon were such as were calculated to mislead.

As we have said the appellant and other property owners interested appeared before the Commissioners and had a hearing on the 28th of August, 1913. The appellant's and the City's witnesses all testified to that fact, which further appears from the entry in the "minute book" of the Commis-

sioners.   The misleading statements and promises relied upon
by the appellant are claimed to have been made by Mr. Gran-
nan, one of the Commissioners, at that hearing.   We have
carefully examined the evidence offered by the appellant and
by the City, and in our view it fails to show any statement
or promise by the Commissioners that were calculated, under
the circumstances, to lead the appellant or others present to
believe that they would receive a further notice from the
Commissioners before the final awards and assessments were
made by them, or that they would receive from the Commis-
sioners any other notice than that prescribed by section 177
of the completion of the assessments.   That some of them
understood and believed that they would receive such a notice
can not be doubted, but such understanding was not, under
the circumstances, warranted by anything the Commissioners
said.   While the witnesses for the appellant testified at
length to their *understanding* of what occurred, the testimony
of those who attempted to repeat what Mr. Grannan said
rather tends to confirm the entry in the "minute book" of the
Commissioners, and the testimony of the two Commissioners
to the effect that after the Commissioners heard their protest
and objections, Mr. Grannan told them that when the Com-
missioners made their final return there would be a "notice
of it in the newspapers."   For instance, George L. Lang testi-
fied that after Mr. Lauber had stated that the grounds of
their objection to the awards and assessments Mr. Grannan
said, "Gentlemen, do not give yourself any concern for I feel
that the proposition (opening of the street) wont go through,
but should it go through, when the Commissioners make their
final awards you will be notified."   On cross-examination the
witness said that he "understood the Commission to mean
that a personal notice would be mailed to each of them; that
the Commissioners did not so state to them, but the first
notice was in writing and they expected the final notice to be
in writing."   The testimony of the appellant and John Broe-
ning, Jr., is practically to the same effect.   There is not a
word in the testimony of these witnesses to suggest that they

were to have a further hearing *before the Commissioners.* All of the witnesses for the appellant state that Mr. Grannan expressed the view that, owing to the opposition to the opening of the street, it would probably be abandoned, and, under the circumstances, his statement that if "it should go through, when the Commissioners make their final return you will be notified," evidently had reference to the notice provided for in section 177, and the only reason it was not so understood was, as stated by the witness Lang, that they had received a "personal notice" of the first awards and assessments.

Carville D. Benson, Esq., who also testified in the case, was not present at the hearing referred to. He stated that he represented the property owners on Mt. Holly street; that after seeing a notice like the one received by the appellant on the 19th of August, 1913, he went to the office of the Commissioners to see the plats, etc., and to ask for a hearing; that Mr. Grannan told him that they were ready to set the objections down for a hearing; that he relied upon Mr. Grannan to let him know when the hearing would take place, and that he did not see the newspaper notices of the final awards. There is no evidence to show that Mr. Grannan knew in advance that the hearing of the objection of the appellant and others would take place on the 28th of August, 1913, or that he had an opportunity to let the witnesses know of it in time to be present. But this witness knew that the notice he saw stated that the Commissioners would meet for ten days in order to complete their review of awards and assessments, and must have known of the provisions of section 177 of the City Charter requiring the Commissioners to complete the assessments and to give the notice therein provided for.

The exceptions to the evidence were not pressed in this Court, and as we find nothing in the several contentions of the appellant to justify a reversal of the ruling of the Court below we will affirm the order appealed from.

*Order affirmed, with costs to the appellee.*