MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.
v. ELIZABETH ERCOLANO
SAME *v.* GUSTAVE KELM ET AL.
[Nos. 13, 14, April Term, 1936.]

*Decided April 9th, 1936.*

The causes were argued, as of January Term, before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Paul F. Due, Deputy City Solicitor,* and *Hector J.*

*Ciotti, Assistant City Solicitor,* with whom was *R. E. Lee Marshall, City Solicitor,* on the brief, for the appellants.

*Ogle Marbury* and *Lawrence W. Hecht,* for the appellees.

BOND, C. J., delivered the opinion of the Court.

The appellees, now or recently holding licenses of stalls in Belair Market in Baltimore, appealed to the Baltimore City Court from awards of one dollar for damages from condemnation and removal of each of their stalls in the widening of Ensor Street to improve an approach to the Bath Street viaduct across the valley of Jones Falls. The awards were increased on the appeals, and the city's appeals to this court present, principally, questions whether the appellees have rights or interests for which substantial compensation might be awarded, and, if so, what is the measure of the substantial compensation? Necessity for resorting to condemnation is not in dispute. The city has chosen to condemn, and submit for adjudication the questions of amount of compensation.

Proceedings to condemn, authorized by an Ordinance of 1930 (No. 952), were first taken in that year, but only one of the board of three commissioners for opening streets then signed the form of award or assessment to be made; one of the commissioners having declined to join because he thought the amounts awarded too large, and the other, since dead, having failed to do so for a reason now unknown. Appeals were entered by the city from those earlier awards, and rested on the docket of the court during the succeeding five years, until the city solicitor advised the commissioners that the awards were invalid, and caused entirely new proceedings to be instituted. The earlier appeals appear to have been dismissed on the docket, and the trial court admitted the proceedings in them in evidence, and ordered them consolidated with the stall holders' appeals from the new, nominal awards. An objection to carrying on at the same time two proceedings to condemn the same property need

not be dwelt upon, since there was no valid initiation of the first proceedings, and the awards reported in them are not to be given consideration on these appeals from the second awards. The trial court's action was erroneous.

The various steps required of the commissioners under sections of the City Charter, secs. 175 to 177 (Code Pub. Loc. Laws 1930, art. 4, secs. 175 to 177), could, according to the terms of the sections as well as by general legal principles, be performed only by a majority of their number. *Kirkpatrick v. Lewis,* 159 Md. 68, 72, 149 A. 614. A note in the minutes of the commissioners' meetings recites that a final return had been made for the opening, widening, and grading of Ensor Street, and this is cited as proof that the award signed by the one commissioner was the award of the whole board, but that meaning does not necessarily attach to the note, and in the face of the facts stated to the contrary, and testified to on behalf of the appellees here, could not be attached. The entering of the appeals from the one commissioner's action could not give it standing and effect as an award under the charter. There was no estoppel to be deduced from a putting faith in the city's entering appeals as if from a valid award. *State v. Kirkley,* 29 Md. 85, 109; *Hagerstown v. Hagerstown Railway Co.,* 123 Md. 183, 193, 91 A. 170; *Timanus v. Baltimore,* 128 Md. 105, 112, 96 A. 1030. The purpose of the appeals may have been to strike the awards out as invalid. And the city could lawfully abandon the first condemnation, especially as it was so initiated by an invalid award, or no award at all under the charter. *Record Building & Loan Assn. v. Safe Deposit & Trust Co.,* 166 Md. 348, 351, 171 A. 43; *Wagner v. James A. Bealmear & Son Co.,* 135 Md. 690, 694, 109 A. 466.

The statute law governing licenses of stalls, Ordinance No. 283, of May 20th, 1907 (section 16 of article 27 of the Baltimore City Code, 1927), provides that, when a stall is rented or hired out by the clerk of the market, this shall be evidenced by a license from the comptroller in terms to be approved by the board of estimates of

tne city "for one year and no longer," which shall, with the approval of the comptroller, be transferable and renewable from year to year during the existence of the market, provided the licensee shall have complied with all laws and ordinances. The license fee for use of a stall of the kind here concerned was fixed at $46, and a rent charge at $2, both payable in advance. Section 20 of article 27 of the City Code provides further that when a stall becomes vacant by failure of a tenant to renew the certificate or to pay his license or rent within thirty days after it becomes due, the stand or stall shall revert to the city. A printed form of certificate used permits occupation of the stall for one year from the first of May for the fee and rent stated, prohibits subrenting, and repeats the provision of the ordinance for reversion of the stall to the city if the license fee or rent is not paid within thirty days. Receipt of the money is usually noted on the certificate issued.

There is no evidence of customary dealing with the stalls by the city before 1900. Stalls were sold at auction in some instances, but by whom is not known to witnesses examined. Private sales by individual owners have been common, and high prices have been obtained in the past. Whatever the title of a licensee or tenant, the rights resulting, in this and other markets, have been valued highly, and availed of as investments, subject to sale or pledge, subject to execution for debts, and transmissible at death as assets of the owner's estate. And in the decisions of this court the rights have been allowed this substantial quality and effect. It is known that, in one other market at least, stalls or rights in stalls were once sold by the city at high rates. *Rose v. Baltimore*, 51 Md. 256; *Border State Sav. Inst. v. Wilcox*, 63 Md. 525; *Green v. Western Nat. Bank*, 86 Md. 279, 38 A. 131. Changes in recent years in the method of retailing food supplies, and perhaps other economic changes, have caused the vacating and abandonment of more than three-eighths of the stalls in Belair Market. The appellees believe the threat of condemnation has contributed to cause the vacating

of the stalls affected; other witnesses are not of that belief.

Elizabeth Ercolano, licensee of a stall numbered 381, to be removed, has been a holder of eleven stalls in the same market, for investment, having purchased them all in 1921 for about $4,500, from persons who were the owners in 1900 and afterwards. Mrs. Ercolano has since sold one for $2,500, and has abandoned five others, retaining No. 381, with four others. That particular stall, however, has not been occupied, except for two months, during the past eight years and more. She paid license fees for it from 1921 to 1934, but has not paid any in 1935, for the current year, and consequently has no certificate or license for it after May 1st, 1935. Lacking sufficient money for payment otherwise, she was permitted by the market master to make delayed payments on other stalls, one at a time, and has done so; but she has paid nothing on No. 381. The market master, in October, 1935, threatened to bring suit for the money, but did not bring it.

Kelm and wife, the other appellees, are holders of licenses for the year beginning May 1st, 1935, the current year, on stalls numbered 233 and 235, having paid the fees for them. These stalls, too, are to be removed. They were purchased by Kelm in 1920 from a William H. Pentz, who appears as holder on the earliest existing record of title. These licensees themselves occupy the stalls as dealers.

Whatever may have been the mode of original acquisition of the stalls from the city, they have been held by the appellees on the terms defined in the ordinances and in the licenses issued. Undoubtedly, the high prices at which licenses or stalls have been sold by holders show that, in the estimates of value, termination within any short time has not been contemplated. And rights acquired in stalls seem to be widely regarded as substantially those of complete ownership, subject, however, to the payment of annual fees. But this court has not been able to see that an expectation of extension beyond a given

year could, consistently with the express limitations in the law, have any foundation in legal obligation on the city, or any foundation more secure than a probability based on a custom of renewal to a licensee so long as he pays. The custom could not override or enlarge the express terms of the law. In fact, there would be no inconsistency. What has been "rented or hired," and licensed by the comptroller, is an exclusive right to a particular use of the site and the stall on it, "for one year and no longer," transferable and renewable from year to year with the approval of the comptroller, during the existence of the market. This limitation of term to a year and no longer, and that of renewals, with the approval of the comptroller, to only a year at a time, seem to limit the right secured the appellees at any one time to one year's duration. A legal right in a stall holder to renew during an indefinite number of years at his option, as contended for, would seem inconsistent with this emphatic limitation. See *Pfefferling v. Baltimore*, 88 Md. 475, 477, 41 A. 778.

In respect to its legal nature, the stall holder's right, while it lasts, resembles other rights to make use of property, but has its peculiar incidents, and consequently its own appropriate governing principles to some extent. Like the right in a church pew, which it has been found to resemble *(Rose v. Baltimore*, 51 Md. 256, 270), even if bought for permanent holding, it is not a title to the site or to the structure on it for all purposes, does not include a right to erect on it anything the holder may choose to erect, if anything at all, or to alter that which the city places on it, or to make any use which he may think fit. Rights in pews may, of course, be defined by express contract; but irrespective of such a contract it is a license or privilege rather than property that the city or a church grants or rents. *Hatch v. Pendergast*, 15 Md. 251; *Rose v. Baltimore*, 51 Md. 256; *Border State Sav. Inst. v. Wilcox*, 63 Md. 525; *Green v. Western Nat. Bank*, 86 Md. 279, 38 A. 131; *Pfefferling v. Baltimore*, 88 Md. 475, 41 A. 778; *Goldberg v. Novickow*, 113 Md. 29, 77 A. 261;

*State v. Burkett,* 119 Md. 609, 87 A. 514; *Baltimore v. Wollman,* 123 Md. 310, 91 A. 339; *Fonte v. Fisher,* 138 Md. 663, 114 A. 703; *Arnreich v. State,* 150 Md. 91, 102, 132 A. 430.

There is general agreement that the right of the pew holder is subordinate to the right in the church authorities, in their management of the structure in which the pews are contained, to remove any of them to make changes; and this court, in *Rose v. Baltimore,* 51 Md. 256, 270, concluded that the right of a stall holder in a market was similarly qualified. By the weight of authority, when a change in a church requiring removal of a pew is not compelled by a ruinous condition of the structure or otherwise, the pew holder, or at least one who has paid a consideration in advance, must either be compensated in money or given another pew with similar advantages of position. "In the latter case the new pew should correspond in location and value with the old, but need not be identical in number unless the old pew deed expressly so provides." 25 *Yale LawJour.*476,477; *Cooper v. Sandy Hill Church,* 32 Barb. (N. Y.) 222, 229; *Mayer v. Temple Beth El* (Com. Pl.) 23 N. Y. S. 1013; *Colby v. Northfield etc. Society,* 63 N. H. 63; 2 *Heales, History & Law of Church Seats,* 68, 70, 83, 88, 89, 113; *Crabb, Real Property,* secs. 481, 1172; 2 *Tiffany, Real Property* (2nd Ed.) secs. 359 to 361; *Rights of Pew Holders,* 22 L. R. A. 206; *Property Rights in Church Pews, Market Stalls, and Lots in Cemeteries,* 19 Amer. Law Reg. (N. S.) 1, 65.

At the trial of these cases below, the market master declared his ability to give the appellees other stalls with the same advantages of relative position. That would be a change of position of the stalls instead of the complete deprivation of stall rights, which had been decided upon and was the object of the condemnation proceeding. The market master would appear to be without authority to change the proceeding, and even if he were authorized, we think the trial court rightly confined it at that stage to the purpose on which it started. If compensation was allowable in the case, it was compensation in money rather than in a stall in another position.

Applying the principles so stated, it is the opinion of

the court, first, that Elizabeth Ercolano, having no license for the year 1935 to 1936, has no rights in stall number 381. By the express terms of the ordinance under which she held her license in preceding years, section 20 of article 27 of the City Code, all rights in the stall reverted to the city upon her failure to pay the fees in the required time, thirty days after May 1st, 1935. On her behalf it is contended that the failure of the city officials to declare that forfeiture had taken place, their forbearance and allowance of additional time for payment, and their subsequent threat of suit at law for the fee and rental for another year, committed the city to her holding over and estopped it from denying the continuation. But, leaving aside any question of the market master's authority to extend the time for payment beyond the limit in the ordinance, and assuming, without deciding, that, if payment had ultimately been received from this stall holder, there would have been the estoppel contended for, still, in the absence of the payment, we find nothing to convert the opportunities given for it into the renewal of license which might have been purchased. The indulgence could not rightly be given that effect after failure of its purpose. See *Brantly's note to Alexander v. Walter*, 8 Gill, 239, 241; *Hardy v. Chesapeake Bank*, 51 Md. 562, 585; *Marshall v. Security Storage & Trust Co.*, 155 Md. 649, 653, 142 A. 186; *Borden Mining Co. v. Coal Co.*, 163 Md. 250, 260, 161 A. 181. There was error in a refusal by the trial court to rule, as requested, that this appellee or petitioner had no rights to be damaged or lost, for which she could be entitled to more than the nominal damages awarded; and the award should have been affirmed. The rights in the stall having, by the express terms of the ordinances quoted, reverted to the city, there was, indeed, nothing to be condemned. The judgment in the Ercolano case must be reversed without a new trial, thus reinstating the nominal allowance.

The appellees in the second case, Kelm and wife, have by virtue of the license for that period a contract for use and occupation of their stalls for the year ending May

31st, 1936. But the city having decided not to continue the stalls, and renew the license for another year, they have nothing more. This is all for which they could be compensated in a condemnation proceeding. While it is not property that is to be taken, merely facilities or rights to use, such rights as well as land may be condemned and compensated for if the city so elects, whether the contract is to be classed as a lease or a license. *Baltimore v. Park Land Corp.*, 126 Md. 358, 362, 95 A. 33; *United States v. Gratiot*, 14 Pet. 526, 10 L. Ed. 573; *Raynolds v. Hanna* (C. C.) 55 Fed. 783, 800. Condemnation, with an assessment of compensation, being the object sought by the city in the proceeding, the court is not required to decide whether the right of the city to make changes in the market might render condemnation unnecessary. Whether it might or might not, legally, condemnation and compensation are not inappropriate to the contract made for the year and the stall holders' rights under it, paid for in advance. For the reasons already stated, the measure of compensation to be awarded could be no more than the amount, if any, by which the fair value of the use and occupation of the stalls from the time of trial to May 1st, 1936, might exceed the license fee and rent paid for the year then ending. The trial court refused a ruling to this effect, and we find the refusal erroneous. The judgment in the second case, that of Kelm and wife, must therefore be reversed, and a new trial had.

Rulings of the trial court on evidence are questioned. Error is found in admission of evidence of amounts paid or offered to be paid in the past for sales of stalls, and amounts of rentals paid or offered in 1930. These facts would have no bearing on estimating the value of the rights in the stalls for the remainder of the current year only, with all prospect of continuance beyond that time removed. Error is found also in admission of evidence that since the institution of the condemnation proceedings the number of vacant stalls in this market has increased, for the fact seems likewise irrelevant to the issue of value of the rights in the Kelm stalls for the current year. Evi-

dence of the value of movable equipment of the stalls was wrongly admitted, we think, as that personal property was not condemned. *Baltimore v. Gamse & Bro.,* 132 Md. 290, 297, 104 A. 429. It seems to this court, however, that evidence of offers by the chief engineer of the city to permit the stall holders to remain in possession until the end of the current year was correctly excluded, for the condemnation and award sought were in conflict with such an arrangement. Work on the widening of the street, it was stated, was not intended to start until the end of the year, but the condemnation was to be completed in the middle of the year.

> *Judgments reversed on both appeals, without a new trial in No. 13, and with a new trial in No. 14, with costs to the appellant in each case.*