GEORGE ROSE *vs.* THE MAYOR AND CITY COUNCIL OF
BALTIMORE.

*Property in a Market Stall—A previous Ordinance to author-
ize a Sale of Market Stalls required by sec.* 638, *of Art.* 4,
*of the Public Local Laws—Estoppel to deny the Validity of
an Act where required Preliminary Formalities or Regula-
tions have been neglected.*

The purchase of stalls in a public market of the City of Baltimore,
like the purchase of a pew in a church, does not confer on the pur-
chaser an absolute property, but a qualified right only.   The right
acquired is in the nature of an easement in, not a title to a freehold
in the land; and such right or easement is limited in duration to
the existence of the market, and is to be understood as acquired
subject to such changes and modifications in the market during its
existence, as the public needs may require.   The purchase confers
an exclusive right to occupy the particular stalls, with their ap-
pendages, for the purposes of the market and none other.   If the
owner be disturbed in the possession of the stalls, he may maintain
case or trespass, according to the nature and circumstances of the
injury, against the wrong-doer.   But he cannot convert them to any
other use than that for which they were sold, and in this use of
them he is required to conform to the regulations of the market as
prescribed by the ordinances of the city.

In all cases there should be a previous ordinance directing the sales
of stalls in public markets in the City of Baltimore, as by the
terms of the power contained in Art. 4, of the Public Local Laws,
sec. 638, it is contemplated that the judgment and discretion of
the Mayor and City Council should be exercised, as to the manner
of making the sales and the term for which the stalls should be
sold.

In a case where the act done is strictly within the powers of the
Mayor and City Council of Baltimore, and could have been author-
ized to be done in the manner in which it has actually been done,
but the corporation has failed to comply with some formality or
regulation which it should not have neglected; in such case, after
both parties to the transaction have acted and proceeded as if all

preliminary formalities and regulations had been complied with, and rights have attached, the corporation itself could not be heard in a Court of justice to set up, with a view of defeating the rights of the other party with whom it has dealt, that it had neglected to observe some formality or regulation that regularly it should have observed before entering into the transaction. The other party to such a transaction, on the same principle, is equally estopped to deny the validity of the act done.

APPEAL from the Circuit Court for Howard County.

This was an action of *assumpsit* instituted in the Superior Court of Baltimore City, by the appellee against the appellant, to recover the amount of certain promissory notes drawn by the appellant in favor of the appellee. The case was afterwards removed to the Circuit Court for Howard County, and submitted to, and tried before the Court, upon the following agreed statement of facts:

It is agreed by the respective counsel in this case, that the facts contained herein, shall be considered as proved, and competent evidence in the trial: that Richmond market is one of the markets of, and situated in Baltimore City, and that the Mayor and City Council is seized in fee simple of the said market, and the said market was established by the Act of the Legislature of Maryland, passed February of 1834, (Acts 1833, ch. 35,) and Act of 1852, ch. 30, and said market was subsequently added to, under the Act of the said Legislature, passed May 4, 1853, (1853, ch. 260,) that the property and land for said market, and its addition, were acquired for the purpose, and in accordance with the aforesaid Acts; and that the said Acts, and the statements they contain, are admitted as evidence in this action.

That the said Richmond market and its addition contain numerous stalls or stands for the sale of commodities, and that some of said stalls are known as and are permanent, being affixed to the soil; that the stalls or stands in controversy in this action, are permanent as

aforesaid, and are also what are known as "Butchers' Stalls."

That on the 5th of December, 1872, the advertisement herewith filed as evidence, and marked "Defendant's Ex. G. R., No. 1," appeared for the first time in the "Sun" newspaper of Baltimore city, and also a similar advertisement appeared in the "American," "Gazette," and "German Correspondent," and that said advertisements appeared daily in said newspapers, from December 5th, as aforesaid, to the 12th of December, 1872, inclusive; and that there was no other public notice by advertisement of the proposed sale mentioned in the before mentioned advertisement, except said sale was advertised and made public by handbills, but not for the period of three weeks before said sale mentioned in said newspaper advertisements.

That on the 12th of December, 1872, Samuel Maccubbin, then Comptroller of Baltimore City, and the same person mentioned in said advertisements, did sell, through F. W. Bennett, an auctioneer, at public auction, certain stalls or stands in controversy in this action, and hereafter more particularly described, subject to the ordinances of the Mayor and City Council then in force, and any that might thereafter be enacted.

That said defendant at said auction, did bid in two of said stands, numbered respectively, Nos. 22 and 38, for the following prices: Stall No. 22 for $1600; stall No. 38 for $2200; and that subsequently, to wit, on the 17th day of January, 1873, said defendant did pay on said stalls the sum of $950, and did pass his several negotiable notes to said Samuel Maccubbin for the balance of said purchase money, and upon the receipt of said purchase money and said notes, the said Samuel Maccubbin did hand and give to the said defendant certain two paper instruments, herewith filed and marked "Defendant's Ex. G. R., Nos. 2 and 3;" the due execution of said notes and writings, and the truth of their contents, are hereby acknowledged, and are admitted in this cause as evidence.

It is further agreed, that said defendant entered into the possession of said stalls or stands, and thereafter occupied the same, and paid a certain yearly license and rental therefor, to sometime in 1875, from which time said defendant has not paid said license or rental, nor has he actually made use of or occupied the same; and that for a long time after said sale, said defendant believed that said sale was in all respects valid, and had been attended in its execution with no irregularity; but when said defendant learned, on or about 18th July or August, 1875, that the validity of said sale was questioned, the said defendant made no further payments on account of the purchase money of said stalls or stands.

And it is further agreed, that said defendant, on April 8th, 1878, did hand a written notice to the Mayor of Baltimore City, directed to the Mayor and City Council of Baltimore notifying said Mayor and City Council, that the said Rose did then tender possession of said stalls to said plaintiff, and withdrew from any contract of sale, from which he had not hitherto withdrawn, and also demanded a return of the purchase money he had paid on and for said stalls; all of which the said plaintiff refused to do or comply with.

And it is further agreed, that some of the stalls in some of the markets have been sold *without any special ordinance* therefor, and others under special ordinances, ordering and sanctioning the same to be done.

It is further admitted, that on the 5th of June, 1877, a ratification act or ordinance was enacted by the Mayor and City Council of Baltimore, which, it is admitted, shall be read in evidence in this cause, subject to all legal exception thereto, entitled "an Act to ratify and confirm sales of market stalls in certain markets in the City of Baltimore;" and further, that a suit was instituted prior to the passage of said ordinance, to wit: on the 2nd day of June, 1877, which said suit is still pending in the

Baltimore City Court, by the defendant, George Rose, for the recovery of the money paid by said Rose to said Mayor and City Council, on account of the purchase of said stalls.

It is agreed by the counsel in this case, that the Court shall enter up judgment upon the facts in this case.

### Dfdt. Ex. G. R., No. 1.

Richmond Market Butchers' Stalls—Permanent and Eave Stalls in the New Richmond Market, by Public Auction.

This (Thursday) morning, December 12th, 1872, at 11 o'clock precisely, on the premises, we shall sell by direction of the Comptroller of the City of Baltimore, 50 butchers' stalls, 100 permanent stalls, 100 eave stalls.

*Terms:*—One-fourth cash, balance in four, eight and twelve months, with interest. Rent of butchers' stalls $20, permanent $4, and eave $2 *per annum.*

N. B.—The above stalls will be sold subject to the Ordinances of the Mayor and City Council of Baltimore city, regulating Markets.

SAMUEL MACCUBBIN, *Comptroller.*

F. W. BENNETT & Co., *Auctioneers.*

### Dfdt. Ex. G. R., No. 2.

COMPTROLLER'S OFFICE,

*Baltimore*, Jany. 17th, 1873.

Received of George Rose, four hundred dollars, for butcher stall, No. 22, New Richmond Market; also his promissory notes dated 12th of December, 1872, at four, eight and twelve months after date, for four hundred dollars each, with interest; which, when paid, will be in full for the above stall; said stall sold subject to the ordinances that are or may be passed by the Mayor and City Council of Baltimore, regulating Markets.

SAMUEL MACCUBBIN, *Comptroller.*

Rose *vs.* Mayor & C. C. of Balto.

*Dfdt's Ex. G. R., No. 3.*

COMPTROLLER'S OFFICE,
Baltimore, Jany. 30th, 1873.

Received of George Rose, five hundred and fifty dollars, for butcher stall, No. 38, New Richmond Market; also his promissory notes, dated 12th of December, 1872, at four, eight and twelve months after date, for five hundred and fifty dollars each, with interest; which, when paid, will be in full for the above stall; said stall sold subject to the ordinances that are or may be passed by the Mayor and City Council of Baltimore, regulating Markets.

SAMUEL MACCUBBIN, *Comptroller.*

The following appeared at the end of each receipt: Rent for stalls, twenty dollars each number *per annum.* License, five dollars each number *per annum.*

*Exception.*—At the trial the defendant offered seven prayers, as follows:

1. If the Court find from the evidence, that the Richmond market is a public market and situated in the city of Baltimore, and was established under and in accordance with the Acts of 1833, ch. 35, 1852, ch. 30, and 1853, ch. 260, of the Legislature of Maryland, and that the said market contains certain stalls or stands for the sale of commodities, and that a certain Samuel Maccubbin was during the year 1872, the Comptroller of Baltimore city aforesaid, and that there were published in said city during the said year 1872, the following newspapers: The Sun, Gazette, American and German Correspondent, and that said Samuel Maccubbin did, in each of said papers, on the 5th of December, 1872, insert a notice, and that the same continued daily in said papers until 12th of December, 1872, that certain stalls in said market would be sold on the 12th of December, 1872, and also that on the 12th December, 1872, the said Samuel Maccubbin did cause many of said stalls in said market to be sold, and that at said sale said Rose did buy in certain stalls numbered 22

and 38, and that said stalls were sold subject to the ordinances of the Mayor and City Council of Baltimore, then in force, and all thereafter enacted in relation to said stalls or stands. That said defendant did pay a large sum of money thereon, to wit: the sum of $950, and enter into possession of the same; * the verdict however must be for the defendant, if the Court further find, that the said stalls Nos. 22 and 38, were not sold, leased or disposed of to said defendant for a certain and limited period of time, but that said stalls were sold or disposed of in perpetuity or absolutely.

2. If the Court find from the evidence all the facts stated in the first instruction prayed for by said defendant to the asterisk in said first prayer, and further find, that said stalls or stands Nos. 22 and 38, or whatever interest therein sold or disposed of as aforesaid, were sold, disposed of or leased for a period of time certain and fixed; the verdict however must be for the defendant, if the Court further find that said stalls or stands were sold, leased or disposed of as aforesaid without any special ordinance, resolution or act of the Mayor and City Council of Baltimore, at the time of said sale or disposition, authorizing the same to be made.

3. If the Court find from the evidence all the facts stated in the first prayer of the defendant, to the asterisk, and also, that said stalls or stands were sold, leased or disposed of for a period of time certain—the verdict must, however, be for the defendant, if the Court further find that said sale, lease or disposition mentioned in said first prayer, was made by a certain Samuel Maccubbin, and that at the time of said sale, the said Samuel Maccubbin was not authorized to make such sale by any special ordinance, resolution or act of the Mayor and City Council of Baltimore.

4. If the Court find all the facts stated in the first prayer of the defendant to the asterisk therein contained,

also find that said sale, lease or disposition was for a period of time certain, as stated in the second prayer of the defendant; and also further find, that the said sale, or lease or disposition of said stalls, was made by the said Samuel Maccubbin, and that said Maccubbin was duly empowered to make such sale or disposition, by a special ordinance or resolution of the Mayor and City Council of Baltimore, or empowered by any other kind of order or act at the time of said sale, yet the verdict must be for the defendant, if the Court further find that no public notice of such lease, or sale or disposition, was given in one of the public newspapers of said city, at least once a week for three successive weeks before such lease or sale.

5. If the Court find all the facts stated in the first prayer of the defendant to the asterisk therein contained, and also find that said sale, lease or disposition, as mentioned in the second prayer of the defendant, was made for a certain period of time as therein mentioned; and further find that public notice of such sale, lease or other disposition was given in one or more of the public newspapers of said city, at least once a week for three successive weeks previous to said lease, sale or disposition of said stalls; and also that the Mayor and City Council in June 1877, did pass an act purporting to ratify said sales, lease or disposition, and that said defendant did enter suit and serve the writ against said defendant for the purchase money paid for said stalls, yet the verdict must be for the defendant, if the Court further find that this action was brought before the passage of said ordinance or ratification act.

6. If the Court find all the facts stated in the first prayer of the defendant to the asterisk therein, and the sale or lease or disposition for a certain period of time, as stated in the fifth prayer of the defendant, and also said advertisement, and passage of said ratification, as mentioned in said fifth prayer, the Court must, however,

find for the defendant, if they further find from the evidence that said defendant did withdraw from the sale and rescind the same, and said plaintiff had notice thereof before the passage of said ratification act or ordinance as aforesaid.

7. If the Court find the facts stated in the first prayer of the defendant to the asterisk therein, and further find the passage of the ratification act or ordinance, as stated in the fifth prayer of said defendant, yet the Court must find for defendant, because 'the act or ordinance does not vest the title or interest in said stalls in said Rose, the defendant, and is a qualified ratification of said sale.

The Court (MILLER and HAMMOND, J.,) rejected all of said prayers, and the defendant excepted to the rejection of his first four prayers.   The finding and judgment of the Court being for the plaintiff, the defendant appealed.

The cause was argued before BARTOL, C. J., BOWIE, BRENT, ALVEY and ROBINSON, J.

*Graham Gordon*, for the appellant.

In this case there was no ordinance or act of the appellee authorizing the sale to be made; but Samuel Maccubbin, upon his own volition, and in the manner and on the terms he thought proper, made the sale in question. *Mayor, &c. vs. Clunet*, 23 *Md.*, 468; *St. Mary's School, et al. vs. Brown, et al.*, 45 *Md.*, 335–6; *Porter's Case*, 18 *Md.*, 300–1; *City of Oakland vs. Carpenter*, 13 *Cal.*, 549; *Hodges vs. City*, 2 *Denio*, 112–13; *Cowen vs. Village of Troy*, 43 *Barb.*, 51–3; *Lyon vs. Jerome*, 26 *Wend.*, 493–4–5–6–7, 499–530; *Perry on Trusts*, (1st Ed.,) 408–9; *Lewin on Trusts*, 209–10, secs. 12, 13, 14, 15; 3rd Ed. *Cooley on Const. Lim.*, *marg. pages*, 204–5, (*note*.)

The ratification Act of June 5th, 1877, shows on its face that the appellee never exercised any of the judgment and discretion that was purely personal to said appellee; but

the Act simply ratified the judgment and discretion of Samuel Maccubbin. It is clear that the sale made by said Maccubbin is bad. The question arises, is it capable of ratification? The appellant contends that the sale is a *nullity,* and an Act of ratification *ultra vires.* The legislative grant is a special grant, and gives no such power. 1833, *ch.* 35; 1852, *ch.* 30; 1853, *ch.* 260, and *Pub. Local Laws, Art.* 4, *sec.* 638. The exercise of the power to sell by an ordinance *subsequent* to the sale, is repugnant to the legislative grant. The appellee must be considered, not as a *principal,* or even *quasi* principal, but only a political *agent* of limited powers, and modes of executing them. *Rittenhouse vs. Mayor & C. C. Balto.,* 25 *Md.,* 345–7; *Horn vs. Mayor & C. C.,* 30 *Md.,* 222; *Mayor & C. C. vs. Reynolds,* 20 *Md.,* 12–14; *St. Mary's School vs. Brown, et al.,* 45 *Md.,* 331–2.

The Court should decide in a doubtful construction in favor of the citizen. *Clark, Dodge & Co. vs. City Davenport,* 14 *Iowa,* 500; *Minturn vs. Larue,* 23 *Howard,* 436–7.

The above cited Acts forbid the appellee to sell or dispose absolutely and forever, of any right, title or interest in and to said market property, as was done by the sale in question. A municipality has no implied power to dispose of property dedicated forever to a public use. *President, &c. vs. Indianapolis,* 12 *Ind.,* 623–4; 2 *Dillon on Municipal Corporations, sec.* 512, *and note; Commonwealth vs. Rusk,* 14 *Penn. St.,* 190–1–2; *Commonwealth vs. Alburger,* 1 *Wharton,* 487.

*James L. McLane,* for the appellee.

The sale of stalls in the Richmond market was a regular and valid sale, made by a duly authorized agent of the municipal corporation. The Mayor and City Council of Baltimore is authorized to "lease, sell or dispose of the stalls and stands in any market, *in any manner, and for any term* they may think proper." *Public Local Laws, Art.* 4, *sec.* 638.

The same power is specially given in the case of the Richmond market, by the Act of 1852, ch. 30. No general ordinance regulating the manner of such sales has ever been passed. In some few cases special ordinances have been passed, directing the City Comptroller to sell and dispose of the stalls in particular market houses; but in far the larger number of cases, such sales have been made by officers of the city government, without special ordinance or direction. Such sales have been made in accordance with the long established and well known custom or usage of the city government, and where special ordinances have been passed, they were merely declaratory of such custom or usage. A custom or usage thus established, and which is strictly in accordance with the charter of the corporation has all the force of law, and is binding on all parties. *Angell & Ames on Corporations, secs.* 284, 329, 331; *Field on Corporations, secs.* 205–227—*notes* 5, 228; *Atty. Gen. vs. Middleton,* 2 *Vesey, Sen.,* 328; *Union Bank of Maryland vs. Ridgely,* 1 *Har. & Gill,* 324; and in *Miller vs. Eschbach,* 43 *Md.,* 1.

But even if it were competent for the city to object to the want of authority on the part of the comptroller, to make the sales in question, no such objection can be made by the appellant in order to repudiate his own contract, the full benefit of which he has enjoyed, and by which the city is willing to be bound. This is peculiarly a case in which the purchaser must be presumed in law to have acted with full knowledge and notice of the scope and limits of the comptroller's power and authority whether fixed by special ordinance, or by long established custom and usage of the corporation. *Reynold's Case,* 20 *Md.,* 14; *Kirkley's Case,* 29 *Md.,* 109.

The sale in this case was clearly within the power of the municipal corporation to authorize. It was therefore, such as the corporation was competent to ratify and adopt as its own act. *Kirkley's Case,* 29 *Md.,* 109; *Reynold's*

*Case,* 20 *Md.,* 14; *Bachman vs. Charleston,* 42 *N. H.,* 125–136; *Peterson vs. Mayor, &c.,* 17 *N. Y.,* 449–453; *Hoyt vs. Thompson's Ex'rs,* 19 *N. Y.,* 207–218; *Whitehead vs. Taylor,* 10 *Adol. & E.,* 210; *Maclean vs. Dunn,* 4 *Bingh.,* 722; *Yarborough vs. Bank of England,* 16 *East,* 6; *Mayor of Carmathen vs. Lewis,* 6 *Car. & P.,* 608.

Ratification in such a case may be by acts or conduct of the principal. *Story on Agency,* sec. 52; *Story on Agency,* secs. 239–252. 1 *Dillon on Municipal Corporations,* sec. 374, *note,* secs. 383–385.

In the present case the municipal corporation fully adopted and ratified the sales made by the city comptroller.

It received the cash payments with full knowledge of all the facts. It gave possession of the stalls, and maintained and protected the purchaser in their enjoyment. It charged and collected through its proper officers, the annual rent and license for the same. And it finally brought suit in its own name, on the notes given at the time of sale. *Grant on Corporations,* 63; *Broom. Com. Law,* 573–4; *Fishermonger vs. Robertson,* 5 *Man. & Gran.,* 192; 44 *Eng. C. L.,* 78; *Dean & Ch. of Rochester vs. Pierce,* 2 *Camp.,* 96; *Beverly vs. Lincoln Gas Light Co.* 6 *Adol. & E.,* 829; *DeGraw vs. Mayor, &c. of Monmouth,* 4 *Car. & P.,* 111.

If special ordinance of ratification were necessary, it is found in ordinance of the Mayor and City Council approved June 5th, 1877.

The purchaser of a market stall acquires nothing more than the right to occupy a particular stand, with the use of whatever fixtures or conveniences may be provided, upon such terms and subject to such regulations as the Mayor and City Council may impose, including payment of annual rent and license fee. He acquires no right to the soil nor to the space above. And the city may abandon the market altogether, at its own discretion. 1 *Dillon on Municipal Corporations,* secs. 315–317; *Gall vs. Cincin-*

*nati,* 18 *Ohio,* 563; *Wartman vs. City of Philadelphia,* 33 *Penn. St.,* 202–210.

Property in a market stall in all respects resembles property in a pew. By the grant of a pew only a limited and usufructuary right passes—limited as to nature of use and term of enjoyment. If the church be sold or burnt, the pew-holder's right is gone. *Freligh vs. Plett,* 5 *Cowen,* 494–6; *Gay vs. Baker,* 17 *Mass.,* 435–7; *Price vs. Methodist Church,* 4 *Ohio,* 515, *app.; Wentworth vs. Parish, &c.,* 3 *Pick.,* 344–346; 1 *Pick.,* 91–102.

ALVEY, J., delivered the opinion of the Court.

This action was brought by the appellees against the appellant to recover the amount of certain promissory notes given for the purchase money agreed to be paid for two butchers' stalls in the Richmond Market, one of the public markets of the City of Baltimore.

It appears by the agreed statement of facts, that, after due notice given of the time, place, and terms of sale, fifty butchers' stalls, and a good many others of different kinds, all in the Richmond Market, were offered for sale to the highest bidder, by and under the direction of the City Comptroller, on the 12th of December, 1872. At this sale, the appellant became the highest bidder for and purchaser of two of the butchers' stalls offered; the price bid for one being $1,600 and for the other $2,200. In compliance with the terms of sale, he paid the Comptroller in cash, the one-fourth of the purchase money, and gave his six promissory notes for the remaining three-fourths, payable respectively at four, eight and twelve months from their date. At the time of paying the cash and passing the notes, the appellant accepted a receipt from the Comptroller describing the stalls, and stating that the stalls were sold subject to the ordinances that were then existing or that might thereafter be passed by the city, regulating markets. The appellant at once entered into possession

of the stalls, and continued to use and occupy them until sometime in the year 1875. During all this time he paid to the City Comptroller, under the ordinances regulating the markets, the annual rent and license fee required to be paid.

At the trial below several prayers were offered by the appellant, all of which were rejected; but there are only two questions presented for discussion on this appeal. 1. Whether, as contended by the appellant, the appellees sold a larger interest or estate in the stalls than they were authorized by law to sell; and 2. Whether all the necessary preliminary conditions had been complied with to enable the appellees to make a valid sale of the stalls.

1. It is admitted that the city corporation is seized in fee simple of the Richmond Market; that is to say, the corporation is seized in fee of the ground and the structures thereon; and that such ground was acquired under the Act of 1833, ch. 35, and the supplements thereto, for the purposes of such market and no other. This being the nature of the title held by the city corporation, the power to dispose of the stalls, in that and the other markets of the city, is given by the Public Local Code, Art. 4, sec. 638, which is expressed thus: "The Mayor and City Council may lease, *sell* or dispose of the stalls and stands in any market, in any manner, and for any term they may think proper." And it is now contended, that inasmuch as the sale of the stalls to the appellant was without express limitation as to the duration of the right, it was a sale of the entire freehold interest and estate of the corporation in the stalls, and that, as the corporation was required to *hold* the ground in trust for the public purposes of a market, such sale was in contravention of that special trust, and therefore it was made without legal authority. In other words, that the corporation has transcended its authority in making the sale of the stalls to the appellant.

This contention results, as we think, from a misconception of the nature of the right or estate acquired by the purchase of the stalls. The purchase of these stalls in a public market, like the purchase of a pew in a church, does not confer on the purchaser an absolute property, but a qualified right only. The right acquired is in the nature of an easement in, not a title to, a freehold in the land; and such right or easement is limited in duration to the existence of the market, and is to be understood as acquired subject to such changes and modifications in the market, during its existence, as the public needs may require. The purchase confers an exclusive right to occupy the particular stalls, with their appendages, for the purposes of the market and none other. If the owner be disturbed in the possession of the stalls, he may maintain case or trespass, according to the nature and circumstances of the injury, against the wrong-doer. But he cannot convert them to any other use than that for which they were sold, and in this use of them he is required to conform to the regulations of the market as prescribed by the ordinances of the city.

This is by analogy to the principles applied in respect to the rights of pew-holders; and, in our opinion, the analogy between those rights and the rights acquired in the stalls is sufficiently exact to make the principles applicable in the one case equally applicable in the other. See *Gay vs. Baker,* 17 *Mass.,* 425; *Daniel vs. Wood,* 1 *Pick.,* 102; *Howard vs. First Parish, &c.,* 7 *Pick.,* 138; *Jackson vs. Ronnesville,* 5 *Metc.,* 127; *Shaw vs. Beveridge,* 3 *Hill,* 26; *Hinde vs. Charlton, L. R.,* 2 *C. P.,* 104; *Washb. on Eas.,* (3*rd Ed.*) 636.

This then being the nature and character of the right disposed of, it is clear, we think, there was no such excess in the estate sold as is supposed by the appellant. The city had express authority to sell or dispose of the stalls, and that in any manner, and for any term, it might think

proper. Under this comprehensive authority, the sale might well be made as it was, without express limitation as to the duration of the right in the vendee. That is limited by the duration of the market; and while it was perfectly competent to the city to have sold for any shorter term, it was also competent to it to sell the stalls for the entire period of the existence of the market, and that is the effect of the sale to the appellant.

2. With respect to the second question, we think there should be no serious doubt. It appears that the sale of the stalls was made without previous ordinance, prescribing the manner of the sale, and for what term the stalls should be sold. It is admitted that some of the stalls in the other markets of the city have been sold without previous ordinance, and that some have been sold under special ordinances directing the sale; so that there has been no uniform practice upon the subject. But it is certainly true that there should be, in all cases, a previous ordinance directing the sales; as by the terms of the power it is contemplated that the judgment and discretion of the Mayor and City Council should be exercised, as to the manner of making the sales, and the term for which the stalls should be sold. However, in a case like the present, where the act done is strictly within the powers of the corporation, and could have been authorized to be done in the manner it has actually been done, but the corporation has failed to comply with some formality or regulation which it should not have neglected, but which has in fact been omitted; in such case, after both parties to the transaction have acted and proceeded as if all preliminary formalities and regulations had been complied with, and rights have attached, the corporation itself could not be heard in a Court of justice to set up, with a view of defeating the rights of the other party with whom it has dealt, that it had neglected to observed some formality or regulation that regularly it should have observed before

entering into the transaction in question. This principle of estoppel is applicable to corporations generally; *Bargate vs. Shortridge,* 5 *H. L. Cas.,* 297; *Zabriskie vs. Clev. Col. & Cin. R. Co.,* 23 *How.,* 381; and it is equally applicable to a municipal corporation as to any other. *Moran vs. Comm'rs of Miami County,* 2 *Black,* 722; *Pendleton County vs. Avery,* 13 *Wall.,* 298, 305–6; *County of Randolph vs. Post,* 93 *U. S.,* 502, 513. If then the city corporation is estopped to question the validity of the sale to the appellant, upon the same principle he is equally estopped to deny the validity of such sale. He was bound to take notice of the authority and the circumstances under which the City Comptroller acted; and if his rights acquired under the contract of purchase are placed beyond question by the corporation, and he is fully protected and secured therein, there can be no ground for declaring that the notes sued on were without consideration, or that the consideration has failed. The appellant was placed in full possession and enjoyment of the stalls, and he continued in such possession for nearly three years after the sale; and it was from no defect of title, or disturbance on the part of the city. that he ceased to use the stalls. Under the admitted facts of the case, we think the Court was entirely correct in rejecting all the prayers offered by the appellant, and entering the judgment for the appellees; and that judgment will be affirmed.

*Judgment affirmed.*

(Decided 26th March, 1879.)