# JOSEPH FONTE ET AL.

*vs.*

## MARY S. FISHER ET AL.

*Market Stalls—Powers of Mayor and City Council.*

The Mayor and City Council of Baltimore has the power, in the exercise of its jurisdiction to regulate and control markets and stalls, to grant a permit to enclose a stall to the existing curb line, in conformity with other enclosures in the same market.

*Decided June 27th, 1921.*

Appeal from the Circuit Court No. 2 of Baltimore City (DAWKINS, J.).

Bill by Mary S. Fisher and Caroline J. Yockel against Joseph Fonte and Charles Alascia for an injunction. From a decree for plaintiffs, defendants appeal. Reversed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, and OFFUTT, JJ.

*Eugene Frederick,* with whom was *Antony Dimarco* on the brief, for the appellants.

*James F. Thrift,* with whom were *McIntosh & Thrift* on the brief, for the appellees.

BRISCOE, J., delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court No. 2 of Baltimore City restraining and enjoining the appellants and the Mayor and City Council of Baltimore from enclosing or entering upon any part of a market stall, known as Street Stall No. 1157, in Lexington Market, Baltimore, and especi-

ally that part of the stall lying under the eave of the market building. The decree was passed upon bill, answer and testimony taken in open court, and the appeal is taken by the defendants Joseph Fonte & Co.

The appellees are the licensees of a market stall, known as Street Stall No. 1157, in Lexington Market, Baltimore City, paying to the city the charges and fees for the use of it for one year from the first day of May, 1919, also for the year 1920, and for many years prior thereto.

The appellants are the owners of two market stalls, Numbers 983 and 985, in Lexington Market, known and called eave stalls, which they have occupied on or about thirteen years, and these stalls adjoin the stall of the appellees in the market.

It appears that, on the 12th of April, 1920, the appellants obtained from the Mayor and City Council of Baltimore a permit to enclose their stalls and to extend this enclosure to the present curb line of the street, and it is this permit that the court below held to be invalid and an invasion of the rights of the appellees under the license now held by them.

The real question then in the case is whether the Mayor and City Council of Baltimore had the power, in the exercise of its jurisdiction to regulate and control markets and stalls in the City of Baltimore, to grant the permit in question, to the appellants to enclose their stall or stalls, in conformity with the other enclosures in the same market.

The Mayor and City Council of Baltimore is given very broad powers as to the control and regulation of the markets and stalls in the City of Baltimore.

In *State* v. *Burkett,* 119 Md. 617, it is said: "As early as the Act of 1796, Chapter 68, the Mayor and City Council of Baltimore was given the power 'to erect and regulate markets' and among the powers conferred upon the city by its present charter is the power 'to erect, regulate, control and maintain markets and stalls within the City of Baltimore, and to regulate and control the sale of all goods, wares, merchandise or other articles therein. To lease, sell or dispose of any stalls

or stands in any market, in such manner and upon such terms as it may think proper.' Act of 1898, Chapter 123." It was further said that "in a large city a public market, if not an absolute necessity, is a great public convenience, and the Legislature has therefore delegated to the Mayor and City Council of Baltimore the power to erect and regulate markets and stalls within the city, and to lease, sell or dispose of stalls and stands in the market in such manner as it may think proper."

In *Hatch* v. *Pendergast,* 15 Md. 258, it was held: "Upon the claim by possession, we may remark that title to a market stand cannot be acquired in that way. The ordinance provides the mode of renting such stands and expressly authorized and directs the clerks 'to remove and drive off every person using or occupying any stall, bench or stand in any of the markets contrary to the true intent and meaning thereof.' Sec. 44. Every seller must be considered as holding his stand by contract with the city, subject to the market regulations, and not adversely to its authority."

In *Rose* v. *Baltimore,* 51 Md. 270, this Court defined the title of market stalls, and said: "The purchase of these stalls in a public market, like the purchase of a pew in a church, does not confer on the purchaser an absolute property, but a qualified right only. The right acquired is in the nature of an easement in, not a title to, a freehold in the land; and such right or easement is limited in duration to the existence of the market, and is to be understood as acquired subject to such changes and modifications in the market, during its existence, as the public needs may require. The purchase confers an exclusive right to occupy the particular stalls, with their appendages, for the purposes of the market and none other. If the owner be disturbed in the possession of the stalls, he may maintain case or trespass, according to the nature and circumstances of the injury, against the wrongdoer. But he cannot convert them to any other use than that for which they were sold, and in the use of them he is required to conform to the regulations of the market as prescribed by the ordinances of the city." *Bond* v. *Baltimore,* 116 Md.

690; *Border State* v. *Wilcox*, 63 Md. 530; *Green* v. *Western Nat. Bank*, 86 Md. 290; *Pfefferling* v. *Baltimore*, 88 Md. 477; *Baltimore* v. *Woolman*, 123 Md. 318.

In the case at bar, the testimony shows that the accepted division line between an eave stall and a street stall was the curb line. Mr. Collier, the present superintendent of markets and who was familiar with the stalls in question, testified that, when application for a permit to enclose the appellants' stall was made, he submitted the controversy between the parties to the City Solicitor, and upon his advice he approved the application and the permit was issued by the Building Inspector's office, to enclose the stalls up to the present curb line. He further testified that seventy-five per cent. of the eave stalls on the south side of Lexington Market are enclosed, and that practically, if not more, the same number are enclosed on the north side of the market; that the city has been controlled by uniformity so far as stalls are concerned in Lexington Market.

The witness Raphael Colacce testified that he was engaged in the building department, building stalls and fixing houses, and was engaged to enclose stalls Nos. 983 and 985 Lexington Market. "Q. Before you commenced work what did you do? A. Before I commenced work Mr. Fonte told me could I build the stall all the way out to the curb and could I get a permit and I told him I could. Q. Did you go to the City Hall and apply for a permit? A. Yes, sir. Q. Will you look at this paper which I now show you and state what it is? (Paper handed witness.) A. This is my permit what I got from the City Hall. Q. When the work was completed how much work was enclosed? A. My permit called for twenty-one feet and a half, by nine feet wide. Q. How much of the curb was enclosed? A. The curb comes to the concrete line. Q. This represents the curb (indicating)? A. Yes. Q. And you came to here (indicating)? A. Yes. Q. That is the end of the concrete line? A. Yes. Q. You say you enclosed other stalls in that market? A. Yes. Q. How many have you enclosed altogether? A. If I keep on—I built about fif-

teen now—besides what I built five and ten years ago. Q.
How were the others enclosed? A. Enclosed in the same way.
Q. Left the curb stone exposed? A. Yes. Q. And come up
to the edge of the concrete line? A. I got to go by what the
city tell me."

Looking at the facts and circumstances disclosed by the
record in this case, we think the Mayor and City Council of
Baltimore acted within the power and authority conferred by
its charter in granting the permit to enclose the eave stalls in
question, and that the Circuit Court No. 2 of Baltimore City
committed an error in passing the decree appealed from in
this case.

It follows, for the reasons stated, that the decree of the
Circuit Court No. 2 of Baltimore City, dated the 11th day
of December, 1920, will be reversed and the bill dismissed.

> *Decree reversed and bill dismissed, with costs
> to the appellants in this court and in the
> court below.*